1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS GORDON,

                Plaintiff,

             v.

D. VAN OGLE *et al*.,

                Defendants,

Case No.  C03-5223BHS/JKA

REPORT AND
RECOMMENDATION

**NOTED FOR**:
**FEBRUARY 22, 2008**

20

21

22

23

24

25

       This 42 U.S.C. § 1983 civil rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Before the court is a motion for summary judgment (Dkt. # 130).  The motion for summary judgment was filed in mid October 2007.  The plaintiff has not filed a timely response to the motion.  Instead, plaintiff has filed a number of motions.  Plaintiff attempted to reopen discovery and extend discovery in this case prior to the motion being filed (Dkt. # 124 and 126).

26

27

28

       This action was subject to normal discovery limits in 2003, when it was first filed (Dkt. # 55).  The parties stipulated to a two-month extension for  discovery (Dkt # 56).  When the defendants moved for summary judgment, plaintiff sought to stay the motion and to compel discovery (Dkt # 63 to 68).  Plaintiff then

1    sought to delay consideration of the summary judgment motion repeatedly (Dkt # 83 and 93).

2         On remand from the United States Court of Appeals discovery was reopened for 60-days as plaintiff

3    indicated he had one area where he needed additional discovery (Dkt. # 124).  The discovery requests he

4    submitted were far beyond what he represented he was seeking (Dkt. # 127, exhibits).

5         After the motion for summary judgment was filed, plaintiff sought to stay the action (Dkt # 132).  The

6    plaintiff also filed an untimely motion for reconsideration regarding discovery (Dkt # 136).  The plaintiff then

7    sought an extension of time to respond to defendant's motion.  Plaintiff has had since mid October, 2007, to

8    respond to the motion and has not done so in a timely manner  (Dkt # 138). Plaintiff's motion for an extension

9    of time was denied (Dkt. # 140).

10                                <u>FACTS</u>

11    The court adopts defendant's statement of facts.

12    **A.**       **PROCEDURAL BACKGROUND AND SUMMARY OF THE CASE**

13         This matter was originally noted for summary judgment on June 23, 2004. Defendants
14    had moved in part to dismiss for failure to exhaust administrative remedies on some of
Plaintiff's claims. Dkt. 59. After numerous continuances, the court issued an order requesting
15    supplemental briefing in light of *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002), which
held that failure to exhaust administrative remedies on some claims in an inmate's complaint
16    mandated dismissal of the entire complaint. Dkt. 90. Defendants filed supplemental briefing
now arguing all of Plaintiff's complaint should be dismissed because of failure to exhaust
17    administrative remedies on some of his claims. Dkt. 92. The Magistrate Judge issued a Report
and Recommendation to dismiss Plaintiff's complaint without prejudice on the grounds of
18    failure to exhaust and did not address the merits of Defendants. other summary judgment
arguments. Dkt. 95.

19         The Report and Recommendation was adopted by the district court on January 21,
20    2005. Dkt. 106. Plaintiff appealed. Dkt. 110. While this matter was pending before the Ninth
Circuit Court of Appeals, the United States Supreme Court issued it opinion in *Jones v. Bock*,
21    549 U.S. ___ , 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). This case held that while claims in an
inmate's complaint for which administrative remedies had not been exhausted must be
22    dismissed, claims for which such remedies had been exhausted should be allowed to go
forward. Therefore, the Ninth Circuit vacated the dismissal of Plaintiff's complaint and
remanded for further proceedings consistent with *Jones*. Dkt.121.

23
24         The court has allowed additional discovery since remand. Defendants now re-submit
their Motion for Summary Judgment on the merits of the claims in Plaintiff's complaint for
which administrative remedies were exhausted.

25
26         Plaintiff, Thomas Gordon, was incarcerated at the Stafford Creek Corrections Center
(SCCC) in Aberdeen, Washington, during the time that the allegations in Plaintiff's complaint
arose.

27
28         Plaintiff named 10 persons as Defendants, all current or former employees at SCCC.
Doug Waddington was the Superintendent of SCCC; Kevin Shanahan was a grievance
coordinator; Sgt. Cheryl Sullivan supervises the mailroom at SCCC; Christopher Scarr was a

Sergeant in the Intensive Management Unit (IMU) where Plaintiff was housed; William Crane was the IMU property officer; Dan Van Ogle was the Correctional Unit Supervisor (CUS) of the IMU at the time the allegations in Plaintiff's complaint arose and the individual responsible for the operation of the unit; Kathleen Whitaker was the Nurse Supervisor at the Health Center at SCCC; David Thompson, was a certified physician's assistant; Patrick Farwell, the Health Care Manager (HCM) who oversees the operations of the Health Center; and David Dunning, was the Chaplain Supervisor at SCCC at the time. Plaintiff's Complaint, p. 3B(i)-(ii).

Plaintiff advances three claims of violation of his civil rights. First, he claims that medical care provided him by Defendants Thompson and Whitaker when he complained of a burning sensation when urinating violated his Eighth Amendment rights. Second, when he filed a grievance over this issue (the medical grievance), Plaintiff claims he was retaliated against by Defendant Shanahan alleging he failed to adequately investigate another grievance involving mailroom and IMU staff and retaliatory conduct they were allegedly participating in (the mailroom grievance) contrary to the First Amendment. Finally, Plaintiff also alleges a First Amendment freedom of religion claim in that Chaplain Dunning did not provide him with religious items he had requested. Plaintiff's Complaint, p. 4(i)-(ii).

Plaintiff also claims Defendant Farwell committed medical malpractice, seeks a declaratory judgment against Defendants Waddington and Van Ogle asserting they violated his Eighth Amendment right against cruel and unusual punishment by allowing retaliation and [he seeks]an injunction requiring a blood test to be administered to determine the cause of his pain upon urination.

## B.    FACTUAL BACKGROUND

During the time that the allegations in Plaintiff's complaint arose, he was housed in the IMU at SCCC. This unit houses offenders who are on maximum custody status, the highest custody level in DOC institutions. Exhibit 1, Declaration of Dan Van Ogle, hereinafter Van Ogle Decl., para. 2. Inmates are placed on maximum custody status for assaulting another inmate or staff or for chronic serious infraction behavior. *Id.* at para. 3. Because of this behavior, inmates have to be segregated from other offenders, thus they are placed in single-man cells. *Id.* Inmates remain in their cell 23 hours a day and are allowed out for one hour a day for exercise in the yard, showers or phone calls. *Id.*

Plaintiff arrived at the SCCC IMU on July 29, 2002. Van Ogle Decl., para. 4. He was transferred there from the Washington State Penitentiary in Walla Walla, Washington, after he assaulted another inmate in the cafeteria, allegedly for gang related reasons. *Id.* Between the time he arrived at SCCC and the time he was transferred to the Washington Corrections Center (WCC) in Shelton, Washington, on February 27, 2003, Plaintiff committed 12 serious infractions of prison rules. *Id.* Many involved destruction of property, one was for a group disturbance and one for tampering with a locking device. *Id.*

Contrary to Plaintiff's claim, he was not transferred to WCC in retaliation for filing a grievance, but to give IMU staff at SCCC a break from trying to manage his behavior. Van Ogle Decl., para. 5. This is a common practice among DOC facilities to rotate the most difficult offenders to manage. *Id.* In fact, when Plaintiff assaulted three staff members at WCC on March 11, 2004, he was soon transferred back to the SCCC IMU. Plaintiff has no evidence he was transferred from SCCC to WCC for filing a grievance. Rather he heard someone at SCCC say that he was transferred to WCC because they needed more bed space at SCCC. Exhibit 2, Deposition of Thomas Gordon, hereinafter Gordon Dep. p. 41, ll. 1-15.

## 1.    <u>The Medical Issues</u>

During the group disturbance, Plaintiff was involved in at SCCC, he broke his radio, smeared pen ink on the wall, tried to break windows to his cell and covered his cell window.

Gordon Dep., p. 6, ll. 1-4. Approximately 30 days later, Plaintiff claims he felt a burning sensation when he urinated for the first time. Defendants are unsure if Plaintiff is alleging some kind of cause and effect between the disturbance and the symptom, as he references the two together in his complaint. It is Plaintiff's belief that urinating is caused by a sexually transmitted disease (STD) probably herpes. Gordon Dep., p. 7, l. 24 to p. 8, l. 16. He believes this because at some time he had read a brochure that said one symptom of an STD may be a burning sensation when urinating. *Id.* Plaintiff admits to never having an STD in the past. Gordon Dep., p. 10, ll. 5-6.

On October 11, 2002, Plaintiff was seen by a certified physician's assistant (PA-C), David Thompson, at the SCCC Health Center. Exhibit 3, Declaration of David Thompson, hereinafter, Thompson Decl., para. 4. *See also* the Exhibit 4, Declaration of Dean Norris with attachments, chart notes and test results for Plaintiff's treatment. Mr. Thompson has been a physician's assistant since 1983 and was certified in 1989. *Id.* at para. 2. PA-C.s are allowed to practice medicine under the supervision of a physician. *Id.* at para. 3.

Plaintiff explained his symptom to Mr. Thompson and his belief he may have contracted herpes or another STD from a toilet seat or spit. Thompson Decl., para. 4. Thompson informed him he was at greater risk of contracting HIV in this manner than herpes which requires intimate contact. *Id.* Further, a burning sensation is not a symptom of herpes rather, herpes results in lesions on the skin. *Id.*

Burning while urinating is a non-specific symptom which may be related to many different conditions such as a bacterial infection or urethritis. Thompson Decl., para. 5. Urethritis is an inflammation of the urethera [sic] caused by such things as concentrated urine or excessive masturbation. *Id.* The treatment for an individual with this symptom starts with a urinalysis (UA) test to reveal if any bacteria are present. *Id.* Numerous UAs have been performed on Plaintiff, both at SCCC and WCC, all of which were negative. *Id.*; Norris Decl., Chart notes for 9/13/02, 10/11/02 and 3/12/03 when Plaintiff was seen by another PA-C, R. De Boer at WCC. Mr. Thompson did prescribe pyridium on October 11, an analgesic, to ease any pain Plaintiff was feeling while urinating. Thompson Decl., para. 5.

Plaintiff was also tested for other STDs and HIV. All results were negative. Thompson Decl., para. 6. Plaintiff does not have an STD despite his beliefs to the contrary. *Id.* He has retained no medical expert to say he does have an STD and he himself is not medically trained. Gordon Dep., p. 10, l. 17 to p. 11, l. 6. He also admits numerous additional tests have been done recently for HIV and Hepatitis C. Id. at p. 12, ll. 18-25.

Plaintiff also named Nurse Kathleen Whitaker as a Defendant in this claim. However, she did not provide any direct care to Plaintiff. Exhibit 5, Declaration of Kathleen Whitaker, hereinafter Whitaker Decl., para. 2.

Because Plaintiff was not getting the diagnosis he wanted, he filed a grievance on November 6, 2002. Exhibit 6, Declaration of Dean Mason, hereinafter Mason Decl., Attachment 5. DOC has a multi-level grievance program that complies with federal law. Mason Decl., paras. 2-6. As Plaintiff resided in the IMU, his Level I grievance was investigated by Jim Dunivan, not Defendant Kevin Shanahan as Plaintiff claims. Exhibit 7, Declaration of Kevin Shanahan, hereinafter Shanahan Decl., paras. 2-3. Dunivan and Shanahan divided up the eight living units at SCCC for Level I grievance investigations but Shanahan facilitated all the appeals. If a grievance was appealed to Level II, Shanahan would contact the Associate Superintendent at SCCC to see who would investigate the matter. Shanahan did not investigate either the Level II or III appeals. *Id.* at para. 4. Once the appeal investigation was done, the investigator would draft a response which would be returned to Shanahan who would forward it to the Superintendent for his signature.

The medical grievance was investigated by Patrick Farwell at Level II. He concurred

with the Level I response that there was no evidence Plaintiff had an STD. Plaintiff appealed to Level III which is investigated by the Regional Administrator for the state region where the inmate is incarcerated. The Regional Administrator also concurred with the previous responses.

**2.      The Mailroom Issues**

Because he filed the medical grievance, Plaintiff alleges certain retaliatory acts were taken against him by SCCC staff. Gordon Dep., p. 22, l. 18 to p. 23, l. 9. He filed a subsequent grievance on November 26, 2002, outlining what he felt these acts were. Mason Decl., Attachment 6. He felt staff was withholding his mail or giving it to others in his IMU pod, that he did not receive $100.00 worth of money orders that had been sent to him, that he had not received two books he had ordered and that he had not received a "care package" containing clothes sent to him. *Id*. Later, in Plaintiff's complaint, he adds allegations that he was denied law library access that resulted in a missed appeal deadline and was also transferred to WCC in retaliation for filing the medical grievance. Plaintiff's Complaint, p. 3A. However, Plaintiff did not grieve either of these latter two issues.

The only "care" package Plaintiff received was on September 10, 2002. Exhibit 8, Declaration of Sgt. Cheryl Sullivan, hereinafter Sullivan Decl., para 3. Inmates are allowed to receive packages from family on a quarterly basis referred to as quarterly packages by staff or care packages by inmates. This clearly could not be a retaliatory act as it occurred almost two months before Plaintiff filed his medical grievance. Further, by policy, IMU inmates are not allowed to have personal clothes items in their cells. Exhibit 9, Declaration of William Crane, hereinafter Crane Decl., para. 3. Thus, if a quarterly package is received for an inmate in the IMU, it is either returned to the sender or stored in the main property room until the inmate is released from the IMU. Id. Mr. Gordon's package was being stored pending his release from the IMU. *Id*.; Sullivan Decl., para. 3.

Regarding the money order, Plaintiff did receive one on November 1, 2002, in the amount of $100.00. Sullivan Decl., para. 4. However, because the manner in which it was filled out violated DOC policy, it was returned to the sender on November 6, 2002. *Id.* Records do not reflect any other incoming mail orders or checks during this time frame. *Id.* at paras. 3-5.

Regarding the books, Plaintiff indicated in his grievance that two books had arrived on October 14, 2002, but had not been delivered to him. Mason Decl., Attachment 6, appeal to Level II. Again, not only is this prior to the November 6 filing of the medical grievance, but all books Plaintiff received during this time frame were delivered to him. Crane Decl., para. 5. The only exception would be for hardcover books which are not allowed in IMU. Id. at para. 4. If Plaintiff received a hardcover book, it would be stored with his other property until his release. *Id*. at para. 5.

Dan Van Ogle, the CUS for the IMU living unit at the time, investigated Plaintiff's mailroom grievance at Level II. Van Ogle Decl. para. 7. Again, Jim Dunivan had conducted the initial investigation and found no evidence staff was mishandling Plaintiff's mail. Mason Decl., Attachment 6, Level I Initial Grievance. Mr. Van Ogle asked Plaintiff if he had any proof of staff withholding his mail or giving it to other offenders and he said "no." *Id.* Van Ogle also interviewed Officer Crane, Sgt. Sullivan and Sgt. Scarr. Van Ogle Decl., Attachment A, 12/19/02 Memo to Associate Superintendent Gary Fleming. Crane and Sullivan explained what happened as outlined above.

Sgt. Scarr was the supervising sergeant of the IMU on third shift (2:00 p.m. – 10:00 p.m.) and he was only asked if he had been made aware of any problems with mail delivery in the A Pod of the IMU and he had not. *Id.* Van Ogle concurred with the results of the Level I investigation as did the Regional Administrator on the Level III response. Mason Decl., Attachment 6. Plaintiff admits he has no knowledge that Sgt. Scarr in any way violated his constitutional rights other than he was interviewed by Mr. Van Ogle. Gordon Dep., p. 48, l. 9 to

p. 49, l. 8.

**3.      The Religious Issues**

Plaintiff also claims his First Amendment rights were violated by Chaplain Dunning. Plaintiff filed a grievance over this as well but he failed to exhaust his administrative remedies in that he never appealed from Level I. Mason Decl., paras. 7-11.

(Dkt. # 130, pages 1 to 8).

STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

DISCUSSION

Defendants move for summary judgment and argue:

1.      Plaintiff's First Amendment religion claims and First Amendment retaliation claims alleging lack of law library access and transfer to WCC should be dismissed for failure to exhaust administrative remedies.

2.      Plaintiff's Eighth Amendment claim should be dismissed because he cannot demonstrate deliberate indifference to a serious medical need.

3.      Plaintiff's medical malpractice claim against Patrick Farwell should be dismissed because he is not a doctor and never treated Plaintiff and, furthermore, the only evidence before the court is that medical staff met the standard of care in Plaintiff's case.

4.   Plaintiff's retaliation claims should be dismissed because he cannot demonstrate a connection between any claimed protected conduct and the alleged retaliatory acts.

5.   The claims against Defendants Waddington, Van Ogle, Farwell and Scarr should be dismissed because they did not personally participate in any constitutional deprivation of Plaintiff's rights.

6.   The individually named Defendants are entitled to qualified immunity.

7.   Plaintiff's request for declaratory and injunctive relief should be denied as he has failed to demonstrate he is entitled to such equitable relief.

(Dkt. # 130 page 9).

1.   Failure to exhaust administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Here, plaintiff filed this action while incarcerated and the act applies to him. The United States Supreme Court determined that Congress enacted the provision in order to reduce the quantity and improve the quality of prisoner suits. Porter v. Nussle, 534 U.S. 516 (2002). By mandating exhaustion, Congress enabled corrections officials to address prisoner complaints internally. Where exhaustion was once discretionary, it is now mandatory. "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter v. Nussle, 534 U.S. 516 (2002) (quoting Booth v. Churner, 532 U.S. 731, 739 (2001)). The Porter Court ruled that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter, 534 U.S. at 520.

Plaintiff did not exhaust the grievance process regarding his religious claim or his claims of retaliatory transfer to WCC or access to a law library. The defendants are entitled to dismissal of these claims.

2.   Medical claims.

An inmate's eighth amendment rights are violated if he or she is treated with deliberate indifference to his or her serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Jones v. Johnson, 791 F.2d 769, 771 (9th Cir. 1986). The indifference to medical needs must be substantial; a constitutional

REPORT AND RECOMMENDATION
Page - 7

1  violation is not established by negligence or "an inadvertent failure to provide adequate medical care."

2  Estelle, 429 U.S. at 105-106; see Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir. 1988).  Similarly, a

3  difference in opinion as to diagnosis or treatment does not establish a constitutional violation.  Shields v.

4  Kunkle, 442 F.2d 409, 410 (9th Cir. 1971).

5        Plaintiff presented his symptoms to medical personnel and tests were run.  Medical personnel

6  determined plaintiff was not suffering from a bacterial infection or STD and prescribed medication to ease

7  plaintiff's symptoms.  Plaintiff fails to show any defendant was deliberately indifferent to his needs and

8  defendants are entitled to summary judgment on this issue.

9        3.    Medical malpractice claim against Patrick Farwell.

10       Plaintiff fails to show he was ever treated by Defendant Farwell.  Defendant Farwell investigated a level

11  II grievance (Dkt. # 130, page 6).  Defendant Farwell is the administrator of SCCC health center, not a medical

12  provider (Dkt # 130, page 16).  This is a pendant state law claim.  Pursuant to RCW 7.70.040 a plaintiff must

13  show a health care provider failed to exercise the proper degree of care and that the failure caused injury.

14  Plaintiff fails to show the care provided was not proper.  The named defendant is entitled to summary

15  judgment.

16       4.    Claims of retaliation.

17       Two of the retaliation claims, transfer to WCC and library access, should be dismissed for failure to

18  exhaust as stated above.  In the alternative transfer of an inmate who has received over 12 serious infractions in

19  a short time to another facility to give staff members in the IMU a break from that particular inmate is not

20  retaliation.

21       To state a § 1983 claim based on retaliation, plaintiff must allege (1) the type of activity engaged in

22  was a protected right under the constitution; and (2) the State impermissibly infringed on the right to

23  engage in the protected activity.  Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).  Plaintiff must also

24  establish that the retaliatory act does not advance legitimate penological goals, such as preserving

25  institutional order and discipline.  Id.; Barnett v. Centoni, 31 F. 3d 813, 816 (9th Cir. 1994).  Plaintiff has

26  failed to make any showing of retaliation.  He made the allegations, but came forward with no evidence to

27  support his claims.

28       Allegations without supporting evidence are not sufficient to withstand summary judgment.  T. W.

Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987). The defendants in this case assert plaintiff lacks evidence to support his claim. A claim unsupported by proper evidence or bald conclusory allegations are not sufficient to withstand Summary judgment. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466 (9th Cir. 1988); cert. denied, 484 U.S. 1006 (1988).

Plaintiff has failed to come forward with competent evidence to show the actions taken in this case were retaliatory. Defendants show that a $100.00 dollar money order was rejected because it was improperly filled out They show that several of the actions complained of occurred prior to plaintiff's filing of grievances and his claim of retaliation for the filing of grievances is not supported by the record. Defendants are entitled to summary judgment.

    5.    Personal Participation.

Defendants argue Mr. Waddington, Mr. Van Ogle, Mr. Farwell, Ms. Whitaker, Mr. Shanahan, And Sgt. Scarr should be dismissed from this action for lack of personal participation. Plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981). A § 1983 suit cannot be based on vicarious liability alone, but must allege the defendants' own conduct violated the plaintiff's civil rights. City of Canton v. Harris, 489 U.S. 378, 385-90 (1989). A supervisor may be held liable only "if there exists either, (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between a supervisor's wrongful conduct and the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th cir. 1991), cert. denied 502 U.S. 1074 (1992).

Defendants Van Ogle, Farwell, Shanahan, and Scarr investigated grievances and were not engaged in any conduct plaintiff alleges violated a right or duty owed him. While plaintiff may disagree with the responses he received to his grievances he has not shown any of these named defendants participated in the conduct at issue. Further, plaintiff's claims of retaliation for the filing of grievances have already been addressed. These defendants are entitled to summary judgment.

Defendant Whitaker is a medical provider. There is nothing in the record to show she ever treated or saw plaintiff. She is sued in a supervisory capacity. Defendant Waddington is the superintendent of the facility he is also sued solely in a supervisory capacity. These defendants are entitled to summary

1    judgment.

2              6.      Other arguments.

3              The court does not address defendants arguments regarding qualified immunity or injunctive relief

4    as plaintiff fails to show any duty or right owed him under the United States Constitution has been

5    violated.

6                                                  CONCLUSION

7              This action should be dismissed with prejudice for the above stated reasons.  Pursuant to 28 U.S.C.

8    § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days

9    from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections

10   will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).

11   Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for

12   consideration on **February 22, 2007,** as noted in the caption.

13

14              DATED this 22 day of January, 2008.

15

16                                        */S/ J. Kelley Arnold*
                                          J. Kelley Arnold
17                                        United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28